UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D
NOV 2 7 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-594-GWU

HOWARD WATTS,                                                                    PLAINTIFF,

VS:                              MEMORANDUM OPINION

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                              DEFENDANT,

## INTRODUCTION

Howard Watts originally brought Watts v. Barnhart, London Civ. A. No. 03-29-GWU (E.D. Ky) to obtain judicial review of an unfavorable administrative decision on his applications for Disability Insurance Benefits and for Supplemental Security Income. After a period of administrative reconsideration prompted by the Court's Memorandum Opinion, Order, and Judgment of June 30, 2004 (Tr. 405-414), it is again before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has established the following test for judicial analysis of benefit denial cases:
1.   Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.   Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.   Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability

1

to do basic work activities? If yes, proceed to step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 416.921.

4.   Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).
5.   Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.   Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform his kind of past relevant work? If yes, the claimant is not disabled. If no, proceed to step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.   Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(l).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1985).

In applying this analysis, it must be remembered that the principles applicable to judicial review of administrative agency action apply. Judicial review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence and in deciding whether the Commissioner employed the proper criteria in reaching his conclusion; the findings as to any fact, if supported by substantial evidence, shall be conclusive. Id. This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion"; it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Id.

One of the factors in the administrative record may be the fact that the Commissioner has improperly failed to accord greater weight to a treating

2

physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).

Additional information regarding the specific steps of the seven-part Garner test cited earlier is also valuable.

In step three of the analysis, the issue is whether the plaintiff has a "severe impairment," defined by the regulations to mean one which significantly limits one's ability to perform basic work activities, which is in turn defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. 404.1521, 416.921. The Sixth Circuit has definitely cautioned against overly-restrictive interpretation of this term. Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6th Cir. 1985). The burden is upon the plaintiff, however, to provide evidence complete and detailed enough to enable the Commissioner to determine that there is such a "severe impairment," Landsaw v. Secretary of Health and Human Services, 803 F.2d 211 (6th Cir. 1986).

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that she or he is unable to return to this work. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).

Once the case is made, however, if the Commissioner has failed to

3

properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways that the Commissioner may meet his burden is through the use of the medical-vocational guidelines.

However, the medical vocational guidelines themselves may not even be fully applicable if a non-exertional impairment is involved. When this happens, the Commissioner may use the rules as a framework for decision-making. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e). It may often be required for the agency to consult a vocational specialist in such cases. Damron v. Secretary, 778 F.2d 279 (6th Cir. 1985). Nonetheless, the finding by the Commissioner that a non-exertional impairment does not significantly affect the level of work that a claimant can do must be tantamount to a finding that this additional impairment is non-severe. Wages v. Secretary of Health and Human Services, 755 F.2d 495 (6th Cir. 1985).

One of the residual functional levels used in the guidelines, called "medium" level work, involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objections weighing up to twenty-five pounds; a person capable of this level of exertion is also deemed capable of performing at lesser levels of "light" and "sedentary." 20 C.F.R. 404.1567(c), 416.967(c). "Light" level work, involves the lifting of no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is in this category when it involves a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of work activity, must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b),

4

416.967(b). A "sedentary" level job encompasses the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a). The guidelines make it clear that disabilities such as postural restrictions or the lack of bilateral manual dexterity compromise a person's ability to do a full range of this type of work; they also indicate that a finding of disabled is not precluded when the person is not able to do a full range of sedentary work, even if that person is a "younger individual." 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e), 201.00(h).

Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only "if the question accurately portrays (plaintiff's) individual physical and mental impairments." Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Watts, a 50 year-old former coal miner and laborer with a "limited" education, suffered from impairments related to a history of hyperextension injury to the neck with cervical lordosis, and an adjustment disorder. (Tr. 364, 372). While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of light level work. (Tr. 375). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 376). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 374-375).

This action was originally reversed and remanded by the Court because

the hypothetical question relied upon by the ALJ did not fairly depict Watts' physical and mental impairments. (Tr. 412-414). Examination of the record reveals that the ALJ again erred in evaluating the medical record with regard to the plaintiff's physical impairments. Therefore, another remand of the action for further consideration is required.

The hypothetical question presented to Vocational Expert Anne Thomas included such physical restrictions as an exertional limitation to light level work along with such non-exertional restrictions as (1) an inability to sit, stand or walk for more than six to eight hours a day in 30 to 45 minute intervals; (2) an inability to more than occasionally stoop, crouch, kneel or climb stairs; (3) an inability to ever crawl or climb ladders, ropes or scaffolds; and (4) a need to avoid exposure to dangerous or moving machinery, vibrations and extreme cold. (Tr. 1065). In response, the witness identified a significant number of jobs which could still be performed. (Tr. 1065-1066). This was reported to be approximately a 60 percent reduction in the number of jobs which would otherwise be available. (Tr. 1071). A restriction concerning the need to avoid overhead reaching was later added. (Tr. 1071). Thomas testified that this additional limitation would reduce the job numbers by a further ten percent. (Tr. 1071).

The ALJ did not include in the hypothetical question a need to avoid frequent turning of the neck. Dr. David Muffly, an examining orthopedic surgeon, found this to be a limitation after performing a physical examination which included a finding of spasms in the cervical spine. (Tr. 225). An x-ray of the cervical spine was reported to have revealed a loss of normal cervical lordosis with some calcification anterior to the C6-C7 disc level with slight narrowing. (Tr. 225). Dr. Allan Levine testified at the administrative hearing as a medical advisor and reported that "the limitations that he expressed, as far as frequent turning of

6

the neck, I think is warranted based on objective findings." (Tr. 1049). The other treating and examining medical sources of record, including Dr. David Hiestad (Tr. 210), Dr. Farooq Ghory (Tr. 223, 809), and Dr. Cesar Agtarap, (Tr. 903-906) did not specifically exclude this as a limitation. Dr. David Swan (Tr. 271, 748), Dr. Calixto Hernandez (Tr. 270), and Dr. Parandhamulu Saranga (Tr. 768), the non-examining medical reviewers, all opined that Watts did not suffer from a "severe" physical impairment; however, neither of these physicians specifically indicated why their opinions differed from that of Dr. Muffley, the examining source and, so, these opinions cannot be used to offset that of the examiner as per Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994).

The defendant asserts that the ALJ, as the fact-finder, was free to reject Dr. Muffley and Dr. Levine's restriction with regard to frequent neck turning. However, the Court notes that the ALJ did not specifically identify any reasons why these opinions were to be rejected. Therefore, the Court must reject the defendant's argument.

This action was also previously remanded to the Commissioner for further consideration of Watts' mental condition. Dr. Kevin Eggerman, an examining consultant, identified several mental limitations. (Tr. 883-884). These were far less serious mental limitations than those reported by Psychologists Rosa Riggs (Tr. 802-803) and Blaine Pinaire (Tr. 714), two other examiners. Dr. Eggerman's opinion offsets these reports and, so, the ALJ could reasonably rely upon them. Therefore, the ALJ dealt properly with the evidence relating to the plaintiff's mental status on the current appeal.

The Court determines that the administrative decision must be reversed and the action remanded to the Commissioner for further consideration. Therefore, the Court must grant the plaintiff's summary judgment motion, in so

7

far as it seeks a remand of the action for further consideration, and deny that of the defendant. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 27 day of November, 2006.

G. WIX UNTHANK
SENIOR JUDGE

8